HAROLD L. GROSVENOR, APPELLEE, V. MILDRED E. GROSVENOR, APPELLANT.

293 N. W. 2d 96

Filed June 10, 1980. No. 42734.

C. J. Galvin, for appellant.

Donald A. Fitch, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an appeal from an order in a marriage dissolution proceeding entered under the provisions of Neb. Rev. Stat. § 42-371(4) (Reissue 1978), subordinating the lien of a previously entered monetary judgment, payable in installments, granted to the respondent wife in lieu of a division of property. The District Court for Dixon County, Nebraska, granted the relief requested and the wife, the judgment creditor, has appealed. She makes two principal contentions: (1) Section 42-371(4) is unconstitutional because it permits the court to order the release or subordination of judgments of certain types, i.e., those granted in marriage dissolution actions, while other judgment creditors cannot be so compelled; and (2) Section 42-371(4), properly construed, does not include the release of a monetary judgment granted in a division of marital property. We find

the appellant's contentions are not meritorious and affirm.

Section 42-371(4) provides:

> Whenever a judgment creditor under sections 42-347 to 42-379 refuses to execute a release of the judgment as provided in this section, the person desiring such release may file an application for the relief desired. A copy of the application and a notice of hearing shall be served on the judgment creditor either personally or by registered or certified mail no less than ten days before the date of hearing. If the court finds that the release is not requested for the purpose of avoiding payment and that the release will not unduly reduce the security, the court may release property from the judgment lien. As a condition for such release, the court may require the posting of a bond with the clerk in an amount fixed by the court, guaranteeing payment of the judgment.

On March 19, 1975, the District Court modified the previous judgment in the dissolution proceeding and overruled a pending motion for a new trial. The modification decree, insofar as is pertinent to this appeal, made an award to the wife in the sum of $67,500, payable $7,500 forthwith and the balance in equal annual installments of $6,000, together with interest on the unpaid balance. The court, in its decree, made it clear that the monetary judgment was a division of property by specifically noting that it was making no award of alimony.

Thereafter, the appellee, who is the owner of several tracts of farmland, filed this proceeding under the provisions of § 42-371(4), asking that the judgment lien above described be subordinated to the lien of a mortgage which he proposed to make to the Federal Land Bank upon an 80-acre tract owned by

him and also to subordinate the judgment lien to the same mortgage on another 80-acre tract which he proposed to purchase with the loan proceeds. At the time of the filing of the application, the balance of the judgment was $36,000, plus interest, and payments were current. The evidence would indicate that other unencumbered property owned by the appellee provided adequate security for the balance owing, and that he has not been delinquent in his previous payments.

A brief account of the legislative history of statutes for release or subordination of judgment liens in domestic relations cases is somewhat enlightening and tends to indicate the reasons why the Legislature has treated the lien of such judgments differently from the liens of other types of judgments. An examination of that history also enables one to answer the contention of the applicant that the provisions do not apply to monetary awards which are given as a division of property.

The following principles govern the interpretation of the statutes:

> Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine the legislative intention. [Citation omitted.] The legislative intention is to be determined from the general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent deduced from the whole will prevail over that of a particular part considered separately. [Citation omitted.]

> "The purpose of all rules or maxims as to the construction or interpretation of statutes is to discover the true intention of the law, and the rules or canons of construction are merely aids for ascertaining legislative in-

tent. The rules of construction are neither ironclad nor inflexible, and must yield to manifestations of a contrary intent." [Citation omitted.]

*Equal Opportunity Commission v. Weyerhaeuser Co.,* 198 Neb. 104, 109, 251 N.W.2d 730, 733 (1977).

It is convenient to begin that history with the statement of this court in *Harrington v. Grieser,* 154 Neb. 685, 689, 48 N.W.2d 753, 755 (1951):

For many years after the Legislature established that alimony and child support payments, including future payments, should be liens it made no provision respecting the court's authority to release or in any way change the priority thereof. Then, in 1935, the Legislature provided if certain conditions were found to exist, none of which were here found to exist as the basis for the court's order of August 8, 1946, that then the court would have authority to enter an order respecting the priority thereof or to subordinate it to the lien of a mortgage, the proceeds of which are to be used solely for the specific purposes as therein set forth. Laws 1935, c. 94, p. 316, now section 42-324, R. S. 1943. The Legislature during its 1951 session broadened the court's authority in this respect with reference to child support. See L. B. 299, appearing as Laws 1951, c. 125.

From time to time, the Legislature has seen fit to make changes. In 1953, provision was made for the court to order release of child support judgments. 1953 Neb. Laws, c. 141, § 1. In 1967, provision was made for the release of the lien of a judgment for alimony. 1967 Neb. Laws, c. 72, §§ 1-3. In 1972, the Legislature made additional changes in the law pertaining to the release of liens, including putting subsection (4) of § 42-371 in the form previously quoted. 1972 Neb. Laws, L.B. 820, § 25. The introductory

phrase of subsection (4), "Whenever a judgment creditor under sections 42-347 to 42-379 refuses . . . ," by its literal language, includes judgment creditors for support in cases of legal separation, § 42-368 (Reissue 1978), judgment creditors for temporary and permanent support payments or alimony, § 42-369 (Reissue 1978), judgment creditors for child support, § 42-364 (Reissue 1978), and judgment creditors for alimony, § 42-365 (Reissue 1974). All these sections were part of L.B. 820.

In 1974, the Legislature amended § 42-365 by including orders for division of property in the form of a monetary judgment. 1974 Neb. Laws, L.B. 1015, § 5, codified as § 42-365 (Reissue 1978).

In 1975, the Legislature added the following language to Neb. Rev. Stat. § 42-371(1):

> The judgment debtor may petition the court which rendered the original judgment for an order releasing the lien as to specific property. The court shall grant the relief prayed for in the petition upon a showing by the judgment debtor that sufficient property shall remain subject to the lien to cover all child support due and that which may become due.

1975 Neb. Laws, L.B. 212, § 2.

A close examination of L.B. 820 indicates that it is not a model of clarity. Section 25 of L.B. 820, codified as § 42-371, provides, in part: "All judgments and *orders for payment of money under this act* shall be liens upon property as in other actions . . . ." (Emphasis supplied.) This obviously includes money judgments in lieu of property division in kind. The note of ambiguity is introduced by subsection (4) of § 42-371 (L.B. 820, § 25(4)), which provides: "Whenever a judgment creditor *under this act* refuses to execute a release of a judgment as provided in *this section,* the person desiring such release may file an application for the relief desired."

(Emphasis supplied.) The provisions pertaining to release in "this section," as previously noted, are: "The judgment creditor may execute a partial or total release of the judgment, generally or on specific property. Release of judgments for child support must be approved by the court which rendered the judgment." 1972 Neb. Laws, L.B. 820, § 25(1).

> The judgment debtor may petition the court which rendered the original judgment for an order releasing the lien as to specific property. The court shall grant the relief prayed for in the petition upon a showing by the judgment debtor that sufficient property shall remain subject to the lien to cover all child support due and that which may become due.

1975 Neb. Laws, L.B. 212, § 2. It appears that the statute might be read to mean that the release by the judgment creditor is voluntary except only in the case of judgments for child support.

Further lack of clarity results from the fact that provisions providing the time when liens for child support and alimony terminate have been inserted between the sections providing the remedy when a judgment creditor refuses to make a release as authorized in this section. However, reading all of the statutory provisions, which are clearly in pari materia, together, leads to the firm conclusion that the Legislature intended the liens for all three categories of money judgment, to wit, child support, alimony, and property division, to be subject to release with court approval. The language in § 42-371(4), "If the court finds that the release is not requested for the purpose of avoiding payment and that the release will not unduly reduce the security," together with language from L.B. 820, § 25(1), "All judgments and orders for payment of money under this act," clearly shows that the Legislature was referring to monetary judgments of all three classes which

were subsisting liens.

At common law, judgments were subject to vacation or modification only during the term in which rendered. *Hamaker v. Patrick,* 123 Neb. 809, 244 N.W. 420 (1932); 49 C.J.S. *Judgments* § 229 (1947). In the absence of statutory authority, a court ordinarily has no power to correct, amend, open, or vacate a valid judgment after the expiration of the term. *Hamaker v. Patrick, supra; State, ex rel. Spillman, v. Commercial State Bank,* 143 Neb. 490, 10 N.W.2d 268 (1943). Statutes providing for the modification of vested judgments apply only to judgments rendered after the statute takes effect. *Karrer v. Karrer,* 190 Neb. 610, 211 N.W.2d 116 (1973). All the provisions we have earlier discussed were in effect when the judgment here involved was entered.

The appellant's contention that the provisions of § 42-371(4) do not apply to monetary awards given as part of a property settlement therefore must fail.

The appellant's basic argument on the constitutional question is that the respondent is deprived of equal protection of the laws contrary to the provisions of the state and federal Constitutions because the State of Nebraska has treated judgment creditors under the marriage dissolution act differently than other judgment creditors. In the former class, the Legislature has authorized the court, in a proper case, to order the release or change the priority of a judgment lien. This is not true in the case of other types of judgment creditors. She, therefore, argues that the legislation is arbitrary and the classification is constitutionally impermissible.

We now turn to the constitutional issue raised by the appellant. Equal protection is the guarantee that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same. Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Cal. L. Rev. 341 (1949). "No State shall . . . deny

to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

It is well to note in the beginning of the discussion of the constitutional issue that the lien of a judgment is a creation of statute subject to legislative control and did not exist at common law. 49 C.J.S. *Judgments* § 454 (1947); *Greene v. Rice,* 32 Idaho 504, 186 P. 249 (1919). It cannot, therefore, be said that the right to the lien of a judgment is a fundamental or basic right. It is, on its face, economic and social welfare legislation.

The standard by which a court reviews a classification established by such legislation is whether it has a rational basis and is at least arguably related to a legitimate function of government not prohibited by the Constitution. *Nebbia v. New York,* 291 U.S. 502 (1934); *New Orleans v. Dukes,* 427 U.S. 297 (1976); *Vance v. Bradley,* 440 U.S. 93 (1979).

The two classifications which are established by the judgment lien laws of Nebraska are, insofar as pertinent to the question raised here, (1) monetary judgment creditors arising in marriage dissolution proceedings and (2) all other monetary judgment creditors.

In this case, the subject matter of the legislation suggests the purposes for difference in treatment. Marriage dissolution relates to the family unit and the support of spouse and child. Frequently, real property used in business or for investment is the source of funds which must be used to pay obligations which continue over a long period of time, e.g., child support, alimony, or monetary amounts payable in installments in lieu of property division. Sometimes borrowing is necessary to keep a farm or other business operating. Expansion by buying additional property may be necessary or advisable. All this may be necessitated in order to insure continued support of family members, including the separated parties as well as the children. In contrast, the

ordinary monetary judgment rests upon an obligation previously incurred and usually payable in one sum immediately, with payment discharging the judgment obligation completely.

The differences above noted are clearly sufficient to support the legislative judgment that judgment liens in marriage dissolution cases are entitled to different treatment.

The briefs of the parties cite no cases directly in point and we have found none. However, the following cases pertaining to lien classifications tend to support the conclusion we have reached. *Green v. Rice, supra; Olson v. Oneida Mines Co.,* 153 Minn. 80, 189 N.W. 455 (1922); *Johnson v. Livingston,* 65 So. 2d 744 (Fla. 1953); *Suber v. Alaska State Bond Committee,* 414 P.2d 546 (Alaska 1966).

AFFIRMED.