INDIAN HILLS COMMUNITY CHURCH, APPELLANT, V. COUNTY
BOARD OF EQUALIZATION OF LANCASTER COUNTY, NEBRASKA, ET
AL., APPELLEES.
NEBRASKA CONFERENCE OF THE CHURCH OF THE BRETHREN, ALSO
KNOWN AS THE ANTELOPE PARK CHURCH OF THE BRETHREN AND
THE CHURCH OF THE BRETHREN OF NEBRASKA, APPELLANT, V.
COUNTY BOARD OF EQUALIZATION OF LANCASTER COUNTY,
NEBRASKA, ET AL., APPELLEES.
412 N.W.2d 459

Filed September 18, 1987.    Nos. 85-896, 85-897.

Beverly Evans Grenier of Steven D. Burns, P.C., and Douglas W. Marolf, for appellants.

Patrick M. Heng, Deputy Lancaster County Attorney, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

In separate cases consolidated for appeal, Indian Hills Community Church and Nebraska Conference of the Church of the Brethren (appellants) appeal judgments of the district court for Lancaster County, affirming the Lancaster County Board of Equalization's actions by which real estate of the appellants was placed on the county tax rolls for 1984 on account of appellants' failure to file an application for tax exemption in accordance with Neb. Rev. Stat. § 77-202.03 (Cum. Supp. 1984). We affirm.

Neb. Const. art. VIII, § 2, provides: "The Legislature by general law may exempt . . . property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user."

Neb. Rev. Stat. § 77-202(1) (Cum. Supp. 1984) provides:

The following property shall be exempt from taxes:

. . . .

(c) Property owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) used

for the sale of alcoholic liquors for more than twenty hours per week, or (iii) owned or used by an organization which discriminates in membership or employment based on race, color, or national origin.

Neb. Rev. Stat. § 77-202.01 (Reissue 1981) states:

Any person, corporation, or organization seeking tax exempt status for any real property shall apply for exemption to the county assessor by January 1 of the year following adoption of sections 77-202.01 to 77-202.07, on forms prescribed by the Tax Commissioner. Any person, corporation, or organization seeking tax exempt status for any tangible personal property except motor vehicles shall apply for exemption to the county assessor by January 1, 1970. The county assessor shall examine the application and recommend either taxable or exempt status for the real property or tangible personal property except motor vehicles to the county board of equalization by February 1 following.

Neb. Rev. Stat. § 77-202.03 (Cum. Supp. 1984) states in part:

(1) When real or tangible personal property except motor vehicles has been exempted from taxation as provided by sections 77-202.01 to 77-202.07, *it shall continue to be exempt for a period of four years* from January 1 of the year following adoption of sections 77-202.01 to 77-202.07; *Provided*, that each owner of real or tangible personal property except motor vehicles so exempt shall file an affidavit with the county assessor by January 1 of each intervening year certifying that the use of each exempted real or tangible personal property except motor vehicles has not changed during the year. *On or before the expiration of such exemption, a new application shall be filed on which the procedure shall be the same as provided for other applications under the provisions of sections 77-202.01 to 77-202.07. If any person, corporation, or organization shall seek a new tax exemption for any real or tangible personal property except motor vehicles in any year, he, she, or it shall apply on or before September 15 of the year of application* as

provided in section 77-202.01 and procedure thereon shall be the same as provided for other applications under the provisions of sections 77-202.01 to 77-202.07 . . . .

(Emphasis supplied.) (We note that § 77-202.01 was amended in 1984 and 1986 and § 77-202.03 was amended in 1986, but such amendments do not affect disposition of the present appeals.)

The parties stipulated facts relative to appellants' claims for tax-exempt property. Each of the appellants owns real estate in Lancaster County, and each filed an "Exemption Application" for the tax year 1980 pursuant to § 77-202.01, claiming exempt status under § 77-202(1)(c) (religious purposes). Appellants' property was exempted from taxation in 1980, and such exemption continued in 1981, 1982, and 1983, when appellants, as required by § 77-202.03, filed an "Affidavit of Use for Continued Tax Exemption" for each of those years after 1980. Without statutory authority or obligation to do so, in November of 1983 the county assessor's office mailed to each appellant a form application for exemption of property from taxation in 1984. That form had been completed by the county assessor, except that part of the application pertaining to a description of the property's use and the signature of the person authorized to sign on behalf of the applicant. Accompanying the exemption application was an explanatory letter from the assessor, reciting the mandatory filing requirement to retain tax-exempt status. Before September 15 in each year prior to 1984, the county sent a second notice to organization-taxpayers which had failed to file an application for exemption, but such practice was discontinued in 1984. Appellants failed to file an exemption application by September 15, 1984, as required by § 77-202.03. On November 19, 1984, the county clerk, on behalf of the board of equalization, mailed a letter to each appellant, informing appellants regarding a prospective hearing before the board concerning requested tax exemptions as well as appellants' failure to file an application for exemption and the county assessor's recommendation that appellants' property be returned to the tax rolls for 1984. At the hearing before the county board of equalization on December 11, 1984, appellants adduced testimony that the 1984 use of

appellants' property was the same as existed in 1980 through 1983, namely, religious purposes. On January 15, 1985, the board of equalization denied tax exemption for each appellant's property, which was then returned to the tax rolls for 1984. Included in each stipulation is the statement:

> [Appellant's] use of the property in question was the same for the tax year 1984 as it was in the previous years. The [appellant's] property is property which otherwise would 'be exempt from taxes' pursuant to Neb. Rev. Stat. §77-202(c) [sic] had the proper filings been made to acquire such exemption.

For 1984, the board of equalization returned previously exempt property of three other organizations (Lincoln Hospital Association, Way of Holiness Church, and Kramer Community Cemetery) to the tax rolls because those organizations failed to file an application for tax exemption authorized under § 77-202(1)(c).

In the district court, appellants asserted that the county board of equalization's action is "contrary to the laws of the United States [and the] State of Nebraska." The district court found appellants had failed to prove entitlement to tax-exempt status for their property because appellants did not file the application required by § 77-202.03. Also, the district court found that the board of equalization's "decision placing [appellants'] property on the tax rolls for Lancaster County for the tax year 1984 is not in violation of the Constitution of the United States or the State of Nebraska."

Appellants' first assignment of error is, in substance, the contention that the parties' stipulation contains the concession, and, therefore, the admission, that appellants' property, through unaltered use (religious purposes) from 1980 through 1983, is exempt from taxation, notwithstanding absence of the application for tax-exempt status of appellants' property. We do not construe the stipulation to the effect suggested by appellants. The stipulation simply acknowledges that appellants' use of real estate has remained the same since grant of the exemption in 1980 and that such use would qualify appellants' property for exemption under § 77-202(1)(c), if the proper document, namely, an application for exemption, had

been filed as required by law. Appellants' first assignment of error is without merit.

Appellants next claim that the district court erred in finding that the board of equalization's action did not violate the establishment and free-exercise clauses of the first amendment to the U.S. Constitution. While appellants do not contend that it is unconstitutional to tax property owned by a religious organization, appellants do argue that denial of tax-exempt status for property owned by a religious organization which has not filed the proper application for tax exemption affords preferential treatment for those religious organizations which file applications to exempt their property from taxation. To support their argument, appellants rely on *Walz v. Tax Commission*, 397 U.S. 664, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970), where the U.S. Supreme Court held that a New York statute allowing tax exemption to churches was not unconstitutional as an attempt to establish, sponsor, or support religion or as an interference with the free exercise of religion. Although the *Walz* Court, quoting from *Gibbons v. District of Columbia*, 116 U.S. 404, 6 S. Ct. 427, 29 L. Ed. 680 (1886), did recognize that " '[i]n the exercise of this [taxing] power, Congress, like any State legislature unrestricted by constitutional provisions, may at its discretion wholly exempt certain classes of property from taxation . . . ,' " 397 U.S. at 679, nothing in *Walz* supports a premise or conclusion that the first amendment to the U.S. Constitution prohibits a state's requirement that a religious organization must comply with state statutes which reasonably prescribe a basis or procedure to obtain an exemption from state taxation.

In *Larson v. Valente*, 456 U.S. 228, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982), the U.S. Supreme Court held that a Minnesota statute imposing registration and reporting requirements on religious organizations that solicit more than 50 percent of their funds from nonmembers discriminated against such organizations in violation of the establishment clause of the first amendment. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." 456 U.S. at 244. However, the *Larson* Court noted:

> We agree with the Court of Appeals that appellees and others claiming the benefits of the religious-organization exemption should not automatically enjoy those benefits. . . . Rather, in order to receive them, appellees may be required by the State to prove that the Unification Church is a religious organization within the meaning of the Act.

*Id*. at 255 n.30. Thus, the U.S. Supreme Court has recognized that states may constitutionally require that religious organizations comply with and satisfy statutes allowing a tax exemption, before such organizations obtain an exemption from taxation of their property.

The Nebraska Constitution does not extend an automatic tax exemption to property of a religious organization. "The Legislature by general law *may* exempt . . . property owned and used exclusively for educational, religious, charitable, or cemetery purposes . . . ." (Emphasis supplied.) Neb. Const. art. VIII, § 2.

A constitutional provision is not self-executing if such provision merely indicates a line of policy or principles without supplying the means by which such policy or principles are to be carried into effect; if the language of the constitutional provision is directed to the Legislature; or if the language of a constitutional provision indicates that subsequent legislation is contemplated or necessary for effectuation of such provision. See, *State ex rel. Shineman v. Board of Education*, 152 Neb. 644, 42 N.W.2d 168 (1950); *State, ex rel. Walker, v. Board of Commissioners*, 141 Neb. 172, 3 N.W.2d 196 (1942); 16 C.J.S. *Constitutional Law* § 46 (1984). Some illustrative provisions of the Nebraska Constitution which are self-executing and, therefore, which require no legislative implementation are art. I, § 21 (just compensation required for private property taken or damaged for public use), see *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985); art. I, § 13 (access to courts of Nebraska; remedy and justice without denial or delay), see *Sullivan v. Storz*, 156 Neb. 177, 55 N.W.2d 499 (1952); and art. VIII, § 3 (redemption from sales for nonpayment of real estate taxes), see *County of Lancaster v. Schwarz*, 153 Neb. 472, 45 N.W.2d 432 (1950). The Nebraska Constitution also contains provisions which are not self-executing and, consequently,

require legislation to carry such provisions into effect; for example, art. V, § 22 ("The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought"), see *Patteson v. Johnson*, 219 Neb. 852, 367 N.W.2d 123 (1985); and art. VIII, § 1 ("The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct"), see *Laub v. Furnas County*, 104 Neb. 402, 177 N.W. 749 (1920). Therefore, we hold that Neb. Const. art. VIII, § 2, providing for tax exemption of certain property, is not self-executing, but requires action by the Legislature to carry such constitutional provision into effect.

This is the first opportunity for this court to address the question whether property of a religious organization may be denied tax-exempt status as a result of the owner's failure to file an application for exemption. However, the general law regarding application of tax-exemption statutes is clear. "Because the power and right of a state to tax property are presumed, tax exemption provisions are strictly construed, and their operation will not be extended by construction." *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 889, 381 N.W.2d 166, 169 (1986). An exemption from taxation is never presumed. *North Platte Lodge, B. P. O. E., v. Board of Equalization*, 125 Neb. 841, 252 N.W. 313 (1934). "Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation." *Bethphage Com. Servs. v. County Board, supra* at 889, 381 N.W.2d at 169. See, also, *Iota Benefit Assn. v. County of Douglas*, 165 Neb. 330, 85 N.W.2d 726 (1957). The burden of proving exemption from taxation is on the party claiming such exemption. *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337 N.W.2d 103 (1983).

Section 77-202.03, which is the statute governing the questions involved in the cases now under review and which specified the duration of a tax exemption for the property of the appellants, in substance provided that, if property is exempted from taxation in any given year, such exemption may continue for each of the 3 successive years after grant of such exemption if the property owner annually and timely files the specified

affidavit. To obtain an additional tax exemption on expiration of the 4-year exemption but before September 15 in the year of a subsequent application, an owner must file a new application and must again show that the property qualifies for the exemption from taxation, for example, property used exclusively for religious purposes. See § 77-202(1)(c). Cf. *Potts v. Board of Equalization*, 213 Neb. 37, 328 N.W.2d 175 (1982). We hold that, under § 77-202.03, an integral part of the process to obtain a tax exemption is reapplication for such exemption, that is, "a new application," before a previously granted exemption has expired. Failure to make reapplication for exemption or file a new application as required by § 77-202.03 results in cessation of the tax exemption when the current exemption expires. Courts in other jurisdictions have reached the same conclusion in their construction of tax-exemption statutes similar to § 77-202.03. See, *Highland Church of Christ v. Powell*, 644 S.W.2d 177 (Tex. App. 1982); *Catholic Institute of Pittsburgh, Pa. v. Board of Property Assessment, Appeals and Review*, 55 Pa. Commw. 545, 423 A.2d 1114 (1980).

In their next assignment of error, appellants maintain that the mandatory language of § 77-202(1)(c) controls the procedural requirements, namely, application for tax exemption, prescribed in §§ 77-202.01 and 77-202.03. We have recognized that the provisions of Neb. Rev. Stat. §§ 77-202.01 through 77-202.07 (Reissue 1981 & Cum. Supp. 1984) are " 'clear and comprehensive' " and " 'constitute a complete and comprehensive act dealing with the matter of tax exemptions. . . .' " *Campus Lt. Hse. Min. v. Buffalo Cty. Bd. of Equal.*, 225 Neb. 271, 274, 404 N.W.2d 46, 48 (1987). "As a series or collection of statutes pertaining to a certain subject matter, statutory components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible." *Wounded Shield v. Gunter*, 225 Neb. 327, 333, 405 N.W.2d 9, 13 (1987). See, also, *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985). In construing the statutes concerning the tax exemption involved in these appeals, we are not restricted to tunnel vision focused on one statute isolated from its related

statutory companions. Rather, we read the various sections of the tax-exemption statutes in conjunction with, and in the light of, one another. The Legislature has provided a full and complete procedure for those organizations seeking a tax exemption for their property. Because a tax exemption such as that involved in the present appeals is not constitutionally required, but is a matter of legislative grace, we decline to hold that the exemption specified in § 77-202(1)(c) pertaining to property of religious organizations is automatic and uncontrolled by the procedural requirements of §§ 77-202.01 and 77-202.03.

Next, appellants contend that the county's belated publication of a list of tax-exempt real estate, that is, a publication on October 24, 1984, rather than publication during September of that year, see § 77-202.03(2), and the county's failure to prepare a tax list "into a suitable book," see Neb. Rev. Stat. § 77-1613 (Reissue 1986), operate as a dispensation from compliance with the application requirement found in §§ 77-202.01 and 77-202.03. Whatever may be the consequences of the county's tardy publication or shortcoming in the transcription of assessments, revitalization of appellants' expired tax exemption is not among them. Appellants' contention about tax lists has no merit.

In their penultimate assignment of error, appellants maintain that the county board's action in returning appellants' property to the tax rolls is a contravention of Neb. Rev. Stat. § 77-1734.01 (Reissue 1986), which states in part:

> (1) In case of payment made of any taxes as a result of a clerical error on the part of taxing officials of the state, county, or other political subdivision of the state, or any taxpayer, the county treasurer is authorized to refund that portion of the tax paid as a result of the clerical error upon verification by the county assessor or other taxing official that such error has been made and upon approval by the county board.

Appellants characterize their failure to file the application for exemption as a "clerical error." However, § 77-1734.01 relates to a situation where a tax or part of a tax has been paid "as a result of the clerical error." Appellants have paid no tax;

hence, § 77-1734.01 is inapplicable in the present cases. See *School Dist. of Minatare v. County of Scotts Bluff*, 189 Neb. 395, 401, 202 N.W.2d 825, 829 (1972): "The only requirement of the statute [§ 77-1734.01] is that some portion of the tax was paid as a result of the 'clerical error.' " Section 77-1734.01 does not exonerate appellants from the application required by §§ 77-202.01 and 77-202.03. We leave to the Legislature whether an organization may be absolved from failure to file an application to exempt its property from taxation. Presently, Nebraska statutes provide no such excuse for failure to file the application for exemption required under §§ 77-202.01 and 77-202.03.

Finally, regarding the county board of equalization's disposition of appellants' claimed exemption, appellants assert that their treatment received differs from the otherwise favorable treatment given to other organizations which failed to file an application for tax exemption. The record does not reflect a shadow of substance for such assertion, which we, therefore, dismiss accordingly.

Appellants have assigned other errors attributable to the district court but have not discussed such assignments of error in their brief. To be considered by this court, errors must be assigned and discussed in the brief claiming that prejudicial error has occurred. See, Neb. Ct. R. of Prac. 9D(1)d (rev. 1986); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986); *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985).

The judgments of the district court affirming the action of the board of equalization of Lancaster County, that is, placing appellants' property on the tax rolls for the year 1984, are affirmed.

AFFIRMED.

KRIVOSHA, C.J., not participating.